Dear Mr. Poirrier:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. On behalf of the Ascension Parish Sheriff's office, you have asked for our opinion regarding the contribution of funds to the Ascension Economic Development Corporation to help fund the cost of a consultant to develop a strategic economic development plan for Ascension Parish.
Your request indicates that the Ascension Economic Development Corporation is a non-profit corporation created pursuant to La.Rev.Stat.33:9020, et seq., solely for the purposes of economic development in the Parish of Ascension. Although a private corporation, it is authorized to carry out economic development functions in conjunction with the various public and private entities in the parish.
According to your request, use of the law enforcement district's public funds to establish a viable economic development plan for the parish is of the utmost importance. The plan will help in the development of financial prosperity and the economic well-being of the parish. Further, you believe continued economic growth will result in more funding to increase tax bases for the Sheriff's office and in turn will help to alleviate crime in the parish.
Specifically, you ask for our opinion as to whether funds generated to support the Sheriffs office may be used for economic development purposes, assuming a cooperative endeavor agreement is entered into by the parties.
In addressing the question presented, we first note that La.R.S.39:704 provides as follows:
§ 704. Proceeds of special tax
 The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. The *Page 2 
records of the taxing authority shall clearly reflect the objects and purposes for which the proceeds of the tax are used.
Accordingly, any public funds generated as a result of a special tax can only be expended in accord with the objects and purposes for which the tax was levied.
Further, since the question presented involves the expenditure of public funds, it must be addressed in light of Louisiana Constitution Article VII, Section 14 which provides, in pertinent part, the following:
 "Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . . `
 * * * (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
As quoted above, Paragraph (A) generally prohibits the loan, pledge, or donation of public funds. Paragraph (C) of Section 14 authorizes the state and its political subdivisions, to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A).
The Louisiana Supreme Court announced a new standard for determining whether Art. VII, Sec. 14 is violated. In Board of Directors of theIndustrial Development Board of the City of Gonzales, Louisiana, Inc. v.All Taxpayers, Property Owners, Citizens of the City of Gonzales, 938 So.2d 11, 23, 2005-2298 (La. 9/6/06) (the "Cabela's" case) the Court found that "(Art VII) § 14(A) is violated when public funds or property are gratuitously alienated."
In Cabela's, the Court looked at the intent of the public entities to conclude that the alienation of funds was non-gratuitous. The public entities demonstrated a non-gratuitous intent by showing that the project served a public purpose, that financial *Page 3 
projections showed financial benefits to the entities exceeded the amount pledged, and that they had a reasonable expectation that the economic benefit from the project would exceed the obligations undertaken by the public entities. These factors alone were not enough to show a non-gratuitous intent on the part of the City and the State. However, when looking at these factors, along with the project and the related documents as a whole, the Court concluded that there was a non-gratuitous intent on behalf of the City or the State. Basically, the Court looked at the transaction as a whole to see if it passed the "smell test".
We glean three things from the Cabela's case when it comes to determining whether an expenditure is gratuitous. First, it is evident that there must be a public purpose when expending funds. Second, the transaction must be looked at as a whole, and can't appear to be gratuitous on its face. Third, public entities must have an expectation of receiving something of value when expending public funds. TheCabela's decision doesn't make it clear exactly what that value is or how it is calculated. In Cabela's, the non-gratuitous intent of the public entities was demonstrated upon a showing by the entities that they expected to receive more than what they gave up. While the Court didn't state that such a showing was necessary, it did make it clear that such a showing was an important factor in its decision. Therefore, it is clear to our office that a public entity must receive more than a nominal return or some minimal value in order for an expenditure to be non-gratuitous. If a public entity can show that it reasonably expects to receive at least equivalent value for the funds it expends or property it transfers, that would seem to show a non-gratuitous intent.
Based upon the foregoing, it is the opinion of our office that in order for an expenditure or transfer of public funds or property to comply with Art. VII, Sec. 14(A), the public entity must show:
 1. A public purpose for the expenditure or transfer;
 2. That the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and
 3. Evidence demonstrating that the public entity has a reasonable expectation of receiving a benefit or value at least equivalent to the amount expended or transferred.
According to your opinion request, it is hoped that the proposed transaction will ultimately result in more funding to increase tax bases for the Sheriffs office, and in addition, help alleviate crime in the parish. As such, in accord with the Cabela's standard and subject to the mandate of La.Rev.Stat. 39:704, we are of the opinion that the Ascension Parish Sheriff has the general authority to expend or otherwise transfer public funds. The Ascension Parish Law Enforcement District was created for the *Page 4 
specific purpose of "providing financing to the office of sheriff for that parish." See La.Rev.Stat. 33:9001. The Ascension Parish Law Enforcement District is further authorized to execute such contracts and other instruments and take such other action as may be necessary to fulfill the above-stated purpose. See La.Rev.Stat. 33:9004.
We also believe the proposed expenditure is for a public purpose. We agree with your assessment that the use of public funds to establish a viable economic development plan for the parish is of importance and further qualifies as a public purpose. Additionally, in our opinion, a strategic economic development plan for Ascension Parish is clearly something of value and is in fact a valuable resource for the citizens of Ascension Parish and the Ascension Parish Sheriffs office. Thus, it appears that the transaction is not merely gratuitous.
However, based on the information available to our office, we are not in a position to determine whether the proposed expenditure is proportionate to the perceived public benefit. Nor are we in a position to determine whether the Sheriff's office has a reasonable expectation of receiving a benefit or value at least equivalent to the amount expended or transferred. As such, we are unable to definitively state that the proposed transfer is a valid use under Louisiana law. Nonetheless, in the event the Sheriff's office is able to effectively demonstrate that it has a reasonable expectation of receiving a benefit at least equivalent to the amount expended or transferred, we believe the proposed transaction would be acceptable.
We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY:__________________________ MICHAEL J. VALLAN Assistant Attorney General JDC/MJV/crt